## Cullen Reed HARRIS and Sandra Kay HARRIS
### v. STATE of Arkansas

CA CR 83-134                                672 S.W.2d 905

Court of Appeals of Arkansas
Division I
Opinion delivered May, 9, 1984
Released for Publication July 5, 1984
[Supplemental Opinion on Denial of Rehearing July 5, 1984.]

*James E. Davis*, for appellants.

*Steve Clark*, Atty Gen., by: *Leslie M. Powell*, Asst. Atty Gen., for appellee.

DONALD L. CORBIN, Judge. Appellants, Cullen Reed Harris and Sandra Kay Harris, were tried and convicted by a Sevier County jury of the offense of manufacturing a controlled substance. The trial court sentenced each appellant to fifteen years in the Arkansas Department of Correction and fined each the sum of $12,000.00. We reverse and remand for a new trial.

## I.

### THE TRIAL COURT ERRED IN OVERRULING APPELLANTS' MOTION FOR A DIRECTED VERDICT BECAUSE THE EVIDENCE WAS INSUFFICIENT.

We need not address this point for reversal challenging the sufficiency of the evidence inasmuch as we reverse and remand for procedural errors committed by the trial court.

## II.

### THE TRIAL COURT ERRED IN ADMITTING EVIDENCE OF FINGERPRINT COMPARISONS BECAUSE APPELLANTS' FINGERPRINTS WERE OBTAINED AFTER AN UNLAWFUL ARREST.

The only witness to testify at the suppression hearing on the arrest was Bill Jones, The Chief of Police of DeQueen, Arkansas. He stated that Lt. Duval of the Arkansas State Police had contacted him stating that the state police would like to question appellants. Several days later, Jones observed appellants' car and followed it until he could confirm that the state police still wanted to question appellants. Jones then stopped appellants and when appellant Cullen Harris started to get out of the car, Jones observed a pistol. Appellant Cullen Harris was subsequently charged with illegal possession of a prohibited weapon. Appellants' fingerprints were taken and matched for comparison with prints taken from items in the van. Appellants were successful in municipal court in having the illegal possession of a handgun charge dismissed on the basis of the extended trip exception. We see no error here. It is clear from Chief Jones' testimony that the officer in this case made a proper determination of probable cause to arrest appellants without a warrant on the handgun charge following a proper stop of their vehicle in order to question

them about another offense. See Ark. Stat. Ann. § 43-429 (Repl. 1977), and A.R.Cr.P. Rule 2.2.

## III.

### THE TRIAL COURT ERRED IN DENYING APPELLANTS' MOTION FOR EITHER A MISTRIAL A CONTINUANCE OR SUPPRESSION OF THE EVIDENCE BECAUSE IT BECAME APPARENT DURING THE TRIAL THAT THE STATE HAD EITHER REFUSED TO OBEY THE COURT'S ORDER REGARDING DISCOVERY OR HAD KNOWINGLY OFFERED UNTRUE TESTIMONY.

The record reflects that defense counsel, prior to trial, filed two separate motions for discovery. Because the State failed to respond to the first motion, the case was continued. Once the discovery requests were complied with, it became apparent to defense counsel that persons other than appellants had made suspicious purchases of chemicals from several companies located in Little Rock and Conway. In an effort to find out who had been making these purchases, defense counsel filed a subsequent motion for discovery requesting the notes from interviews with the employees of these chemical companies and copies of any photographs shown to them. Information furnished by the State indicated that no witness had identified either appellant. The State further claimed that photographs of appellants were shown to the witnesses between April 11, and April 13, 1982. The photographs of appellants furnished by the State were photographs taken after their arrest on April 27, 1982, and could not possibly have been the photographs exhibited to the witnesses.

During trial, witness Betty Martin testified that she recognized appellant Sandra Harris as having been a passenger in a van driven by a person known to her as Jim Roberts when he purchased chemicals from Ms. Martin's employer, SIS, Incorporated, on three occasions in the

spring of 1981. She also claimed that an Officer Berry or some other officer had shown her four individual photographs of four different women, from which she selected a photograph of appellant Sandra Harris. This occurred on cross-examination by defense counsel. She did admit, however, that she could have selected a photograph of someone else, but insisted that police had shown her photographs on several occasions and that she had selected a photograph of the woman riding in a van with Jim Roberts. Officer Berry testified both before the jury and in an in-camera hearing that he had shown photographs to Ms. Martin on one occasion, that she had identified two photographs of Jim Roberts and that Ms. Martin had stated that a photograph of a woman looked like the person she saw as a passenger in the van. It was stipulated by the parties that this photograph of a woman was not in fact a photograph of appellant Sandra Harris.

The record reflects that the State was apparently as surprised as defense counsel in regard to the alleged out-of-court identification based upon photographs shown to Ms. Martin by a second officer, an Officer Stepp. No record of this identification was in Officer Berry's records or in any of the prosecution's files.

We do not agree with the State's contention that Officer Berry's testimony could be used as impeachment of Ms. Martin's testimony and that no error occurred. The argument of appellee is without merit as the harm was already done at this point and the prejudice to appellants obvious. Furthermore, it is of no avail to the State that defense counsel had equal access to witness Martin. The record reflects that defense counsel did have contact with Ms. Martin on several occasions, but in view of the State's responses to appellants' discovery motions, there was nothing provided to alert them to a possible out-of-court identification. We believe appellants had a right to rely on their earlier discovery motions. We do not believe this to be a case of a defendant in a criminal case relying on discovery as a total substitute for his own investigation, which is

impermissible. *Henry* v. *State*, 278 Ark. 478, 647 S.W.2d 419, cert. denied, 104 S.Ct. 121 (1983).

At this stage of the proceedings, the following alternatives were available within the discretion of the court: (1) grant appellants' motion for a continuance so they could obtain and inspect the evidence; (2) suppress the identification testimony or, (3) grant a mistrial. The fact that the trial court did suppress any further reference to the alleged out-of-court identification did not cure the problem. Witness Martin had already testified under oath to the out-of-court identification. Thus, only two of the three alternatives were available to the trial court. We do not believe the court abused its discretion in not granting a mistrial as a mistrial in an extreme remedy which should only be granted as a last resort when the error is so prejudicial that justice could not have been served by continuing the trial. *Pruitt* v. *State*, 8 Ark. App. 350, 652 S.W.2d 51 (1983). We believe the first alternative, granting a continuance, would have been the more prudent choice as the trial could possibly have resumed after a short delay. A continuance need only be granted upon a showing of good cause. A.R.Cr.P. Rule 27.3. The burden is upon the appellants to demonstrate that the trial court abused its discretion in denying a continuance. *Walls* v. *State*, 8 Ark. App. 315, 652 S.W.2d 37 (1983). Our review of the proceedings in the instant case leads us to the conclusion that appellants have met their burden and the trial court abused its discretion. We reverse and remand for a new trial on this point.

IV.

THE TRIAL COURT ERRED IN REFUSING TO GRANT A MISTRIAL WHEN THE PROSECUTOR DELIBERATELY ARGUED OUTSIDE THE RECORD ON THREE OCCASIONS.

Appellants allege reversible error in the trial court's rulings on three objections made by them during the

prosecuting attorney's closing argument. It has been uniformly held that in cases of denial of a motion for mistrial based upon prosecutorial improprieties, we will not reverse the judgment of the trial court in the absence of an abuse of the wide latitude of discretion vested in the trial judge. *Brown & Bettis* v. *State*, 259 Ark. 464, 534 S.W.2d 207 (1976). We have always recognized and given due regard to the trial judge's considerable degree of discretion in controlling and supervising arguments of attorneys at jury trials. *McGill* v. *State*, 253 Ark. 1045, 490 S.W.2d 449 (1973).

The first objection in the case at bar was in reference to comment by the prosecutor on the testimony of the president of Capital Chemical and Supply Company that appellant Sandra Harris ordered the platinum oxide through his company. The trial court agreed with appellants that this argument was outside the record and in fact opposite to the witness's testimony, but refused to grant a mistrial. Next, appellants objected to the prosecutor's comment on testimony by the chemist. The prosecutor started to show the jury State's Exhibit No. Seven, which was a box top with a chemical formula written on it, when appellants objected and correctly pointed out that the exhibit had never been introduced into evidence. Again, the court denied appellants' motion for mistrial. In each of these two instances, the trial court promptly admonished the jury to the effect that any statement not borne out by the evidence, made by the attorneys, was to be disregarded and that the jury was to disregard any testimony in regard to State's Exhibit No. 7. In addition, the jury had been instructed with the standard instruction AMCI 101(e) that "closing arguments of the attorneys are not evidence but are made only to help in understanding the evidence and applicable law." Instructions and admonitions to the jury generally suffice except where the comments of counsel are patently inflammatory and prejudicial or where improper tactics are so repetitious that fairness is overcome. *Abraham* v. *State*, 274 Ark. 506, 625 S.W.2d 518 (1981). We believe the above was sufficient to cure any possible prejudice to appellants and the trial court properly denied their motions for mistrial.

Finally, the court overruled appellants' objection when the prosecutor argued to the jury on the issue of punishment to the effect that he had seen 16, 17, 18 and 19-year old persons sent to prison for using less serious drugs than those involved in this case. These remarks regarding punishment were made on facts outside the record which could have caused the jury to be persuaded to punish appellants more severely and was thus prejudicial and highly improper. A mistrial should have been granted. See *Mays* v. *State*, 264 Ark. 353, 571 S.W.2d 429 (1978) and *Long* v. *State*, 260 Ark. 417, 542 S.W2d 742 (1976). As stated in *Mays, supra,* ". . .the desire to obtain a conviction is never proper inducement for a prosecutor to include in his closing argument anything except the evidence in the case and legitimately deducible conclusions that may be made from the law applicable to a case." We reverse and remand for a new trial on appellants' third objection to the prosecutor's remarks during closing argument.

V.

THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE CONTENTS OF THE PLY-MOUTH VAN OBTAINED THROUGH AN ILLEGAL SEARCH.

The evidence presented by the State at the suppression hearing reveals that Floyd Peterson, owner of a self-storage garage, became concerned over a chemical odor emanating from one of the rented compartments in his garage. His wife testified that she had rented the unit to an Allen Parson; that the contract provided that no combustibles should be stored and that property would be considered abandoned and disposed of after sixty days of unpaid rental; and that the rent on this unit was six months past due. Peterson called the police and requested assistance in investigating the odor. After cutting the lock, Peterson consented to Officer Sullivan entering the unit and the van located inside which was the apparent source of the odor.

The record reveals that the officer had previously worked with chemicals and recognized the odor as coming from a combustible chemical. When he entered the van, he observed an assortment of glassware and chemicals which had spilled out or rusted through their containers. Officers Sullivan and Sanderlin both testified that they were concerned over the possibility of an explosion or fire.

Rule 11.2 of the Arkansas Rules of Criminal Procedure provides:

Persons From Whom Effective Consent May be Obtained.

The consent justifying a search and seizure can only be given, in the case of:

\* \* \*

(b) search of a vehicle, by a person registered as its owner or in apparent control of its operation or contents at the time consent is given; and

(c) search of premises, by a person who, by ownership or otherwise, is apparently entitled to give or withhold consent.

Peterson was the owner of the premises and requested the search. By the terms of the rental contract, the van was abandoned property which was under Peterson's control. Other facts support a finding that the van was abandoned and that appellants had no expectation of privacy in it as follows: no rent had ever been paid following the initial contract; no address or telephone number was listed at which the Petersons could contact the presumed owner; and the license tag had been removed from the van before it was stored. The evidence is uncontroverted that Peterson had the authority to consent to the search. See *Spears* v. *State*, 270 Ark. 331, 605 S.W.2d 9 (1980). We find no error on this point for reversal.

Reversed and remanded.

COOPER and CRACRAFT, JJ., agree.

Supplemental Opinion on Denial of Rehearing
July 5, 1984

JAMES R. COOPER, Judge. Although we today deny the appellant's petition for rehearing, we are issuing this supplemental opinion because of the significant constitutional issue presented: when a reversal and remand based on trial error is required, must the appellate court also consider the sufficiency of the evidence to support the appellant's conviction? Our original decision in this case, *Harris* v. *State*, 12 Ark. App. 181, 672 S.W.2d 905 (1984), did not reach the sufficiency of the evidence, and now, on rehearing, the appellant argues that *Burks* v. *United States*, 437 U.S. 1, 98 S. Ct. 2141, 57 L.Ed. 2d 1 (1978) requires us to do so. We disagree with the appellant's argument.

We first note that this precise issue has not been decided by the United States Supreme Court, although several other appellate courts would disagree with that statement. The issue was left open in *Greene* v. *Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L. Ed.2d 15 (1978), handed down the same day as *Burks*. Further, we note that the Arkansas Supreme Court has, apparently, never been faced with this precise issue, although that Court has, without explanation, considered the sufficiency of the evidence and has reversed and dismissed at least one case, *Nichols* v. *State*, 280 Ark. 173, 655 S.W.2d 450 (1983), without considering several alleged trial errors which were raised in that appeal. This Court, in *Vowell* v. *State*, 4 Ark. App. 175, 628 S.W.2d 599, (1982), declined to consider the sufficiency of the evidence since the case was reversed and remanded for various trial errors. The Arkansas Supreme Court reviewed *Vowell*, and reversed it, *Vowell* v. *State*, 276 Ark. 258, 634 S.W.2d 118 (1982). In so doing, the Court noted that because of our disposition of the case, it was necessary to examine the sufficiency question. We, therefore, have no clear answer to the question from the Arkansas Supreme Court. This is a question of first

impression in Arkansas, and while the case would certainly be one which could be certified to the Arkansas Supreme Court under Rule 29 of the Rules of the Supreme Court and Court of Appeals, we have not done so because the issue arises on petition for rehearing in this Court.

*Burks, supra,* involved 28 U.S.C. § 2106, which gave broad remand powers to the Courts of Appeals. The United States Supreme Court, in *Bryan* v. *United States,* 338 U.S. 552, 70 S. Ct. 317, 94 L. Ed. 335 (1950), held that § 2106 authorized a remand for a new trial even in a case where the judgment was reversed solely due to a lack of sufficient evidence to sustain the conviction.

Of course, § 2106 is limited by the United States Constitution. In *Bryan* the Court rejected the argument that remanding for a new trial after finding insufficient evidence to support the conviction violated rights under the double jeopardy clause of the Fifth Amendment. In *Burks* the Supreme Court decided the issue of "whether an accused may be subjected to a second trial when conviction in a prior trial was reversed by an appellate court solely for lack of sufficient evidence to sustain the jury's verdict." The Court held that such a retrial, under those circumstances, would violate the double jeopardy clause. However, the Court carefully pointed out that reversal for trial error was a different matter. The Court stated:

> . . . In short, reversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, *e.g.,* incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct. When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt

free from error, just as society maintains a valid concern for insuring that the guilty are punished. See Note, Double Jeopardy: A New Trial After Appellate Reversal For Insufficient Evidence, 31 U. Chi. L. Rev. 365, 370 (1964). 437 U.S. at 15-16, 98 S.Ct. at 2149, 57 L.Ed. 2 at 12.

In sum, *Burks* only holds that if an appellate court *has* decided that there was insufficient evidence to support a conviction, a retrial is barred. *Burks* and *Green, supra,* do not decide whether an appellate court *must* (as alleged by the appellant) look at the sufficiency of the evidence in addition to evidentiary points which require reversal.

It is clear that remanding for a new trial, where the only issue on appeal is the sufficiency of the evidence, would give the State a second opportunity to prove the same points which were at issue in the first trial. *Burks* prohibits such retrials. Where, however, a case is reversed for trial errors, wholly different considerations are presented. Some of those considerations were outlined in *U.S. v. Mandel,* 591 F.2d 1347 (4th Cir., 1979), where the court stated:

> . . .In many cases, such as the one at bar, with a vast volume of evidence, it would be doing a distinct disservice to the defendants to decide on appellate review that if a part of the evidence had been omitted the balance would be sufficient to convict. Among other things, this rather invades the province of the jury and trial court on retrial. The jury is the proper trier of the facts, including the credibility of witnesses and the inferences to be drawn from the testimony. Perhaps the faulty evidence was the key to the jury's decision; perhaps it was not. Who can say? Certainly not a court of appeals which has neither seen the witnesses nor heard them testify.

Another reason for not requiring an appellate court

to adjudge the sufficiency of the balance of the evidence, when a part of the evidence has been improperly admitted, is that it is impossible to say what other evidence the government might have produced had the faulty evidence not been admitted, and what theory of the case the government might have principally pursued had it been presented in the context of different evidence before the jury.

Thus, we believe it does a service neither to the defendants nor to the government to adjudicate the sufficiency of the balance of the evidence when important evidence has been ruled to be inadmissible. To do so, it would be necessary to some extent to set ourselves up as triers of fact, which should be avoided, if possible. As well, we would be required to speculate as to whether or not the government would have conducted the prosecution in any different manner had the faulty evidence been excluded.

We do not, then, pass upon the sufficiency of the evidence in this case, leaving that question in the first instance to the trial court and jury on retrial. *Id.* at 1373-74.

In *State* v. *Lamorie*, 610 P.2d 342 (Utah, 1980), the Utah Supreme Court dealt with this issue, and held that:

Reversal and remand for a new trial does not place the accused in double jeopardy where the error giving rise to the reversal is merely trial error, as distinguished from insufficiency of the evidence. *Id.* at 347.

Numerous jurisdictions are in accord with the views expressed in *Mandrel* and *Lamorie. See, e.g.:*

*United States* v. *Tranowski,* 702 F.2d 668 (7th Cir.1983), *United States* v. *Sarmiento-Perez,* 667 F.2d 1239 (5th Cir.1982), *United States* v. *Harmon,* 632 F.2d 812 (9th Cir. 1980), *People* v. *Sisneros,* 44 Colo. App. 65, 606 P.2d 1317 (1980), *Hall* v. *State,* 244 Ga. 86, 259 S.E.2d 41 (1979), *Mulry* v. *State,* ___ Ind. App. ___, 399 N.E.2d 413 (1980), *Phillips* v. *Commonwealth,* 600 S.W.2d 485 (Ky.Ct. App. 1980), *State* v. *Boone,* 284 Md. 1, 393 A.2d 1361 (1978), *DiPasquale* v. *State,* 43 Md. App. 574, 406 A.2d 665 (1979), *Commonwealth* v. *Taylor,* 383 Mass. 272, 418 N.E.2d 1226 (1981), *State* v. *Wood,* 596 S.W.2d 394 (Mo. 1980), *State* v. *Longstreet,* 619 S.W.2d 97 (Tenn. 1981, *Ex parte Duran,* 581 S.W.2d 683 (Tex. Ct. App. 1979), *State* v. *Frazier,* 52 S.E.2d 39 (W. Va. 1979).

Other courts disagree, sometimes in the same jurisdictions, and hold that the sufficiency of the evidence must be considered. For example, in *Hooker* v. *State,* 621 S.W.2d 597 (Tex. Cr. App. 1980), the appellant's conviction was reversed for the failure to grant a change of venue. The appellant, on rehearing, alleged that, despite the court's reversal on procedural grounds, he was entitled to have his challenge to the sufficiency of the evidence decided. The court agreed, holding that:

> It now appears clear that in view of *Burks* and *Greene* a challenge to the sufficiency of the evidence should be considered before disposing of a case even though the reversal may be based on another ground. *Id.* at 598.

In *Mitchell* v. *State,* 44 Md. App. 451, 409 A.2d 260 (1979), the Court of Special Appeals stated:

> Thus, at least since *Burks,* when an appellant in a criminal case raises the sufficiency issue on appeal, he has a definite and Constitutionally based interest in having it determined. Because of *Burks,* the sufficiency issue can no longer become moot, notwithstanding the

existence of other grounds for reversal. Unless the appellant has in some way waived his right to appellate review on that issue, it must be decided, for it is upon that decision that the question of a retrial will hinge. *Id.* at 462, 409 A.2d at 267.

Other jurisdictions follow this view. *See, e.g.:*

*United States* v. *Till,* 609 F.2d 228 (5th Cir. 1980), *United States* v. *Watson,* 623 F.2d 1198 (7th Cir. 1980), *United States* v. *U. S. Gypsum Co.,* 600 F.2d 414 (3rd Cir. 1979), *United States* v. *Hemming,* 592 F.2d 866 (5th Cir. 1979), *United States* v. *Orrico,* 599 F.2d 113 (6th Cir. 1979), *United States* v. *Santora,* 600 F.2d 1317 (9th Cir. 1979), *United States* v. *Morris,* 612 F.2d 483 (10th Cir. 1979), *United States* v. *McManaman,* 606 F.2d 919 (10th Cir. 1979), *United States* v. *Meneses-Davila,* 580 F.2d 888 (5th Cir. 1978), *United States* v. *Vargas,* 583 F.2d 380 (7th Cir. 1978), *Griffin* v. *United States,* 396 A.2d 211 (D.C. 1978), *State* v. *Bannister,* 60 Haw. 658, 594 P.2d 133 (1979), *People* v. *Taylor,* 76 Ill.2d 289, 391 N.E.2d 366 (1979), *Ellerba* v. *State,* 41 Md.App. 712, 398 A.2d 1250 (1979), *Commonwealth* v. *Funches,* 379 Mass. 283, 397 N.E.2d 1097 (1979), *State* v. *Verdine,* 290 Or. 553, 624 P.2d 580 (1981), *Sloan* v. *State,* 584 S.W.2d 461 (Tenn.Cr.App. 1978).

Although it would be possible to examine the sufficiency issue first, as the Arkansas Supreme Court did in *Nichols, supra,* we decline to do so for the reasons stated in *Mandel, supra,* and those cases cited above. Where the appellant has alleged that his trial was tainted by error, and where the appellate court agrees, the court cannot properly enter into the province of the jury and determine if the remaining evidence is sufficient to sustain the conviction. The result of such an approach would be to force the State to overtry cases. As stated in *State* v. *Boone,* 284 Md. 1, 393 A.2d 1361 (1978):

By the same token if the trial court erroneously admits evidence, resulting in reversal, as in the case before us,

the State should not be precluded from retrial even though when such evidence is discounted there is evidentiary insufficiency. The prosecution, we believe, in proving its case is entitled to rely upon the correctness of the rulings of the court and proceed accordingly. If the evidence offered by the State is received after challenge and is legally sufficient to establish the guilt of the accused, the State is not obligated to go further and adduce additional evidence that would be, for example, cumulative. Were it otherwise, the State, to be secure, would have to consider every ruling by the court on the evidence to be erroneous and marshall and offer every bit of relevant and competent evidence. The practical consequences of this would seriously affect the orderly administration of justice, if for no other reason, because of the time which would be required to prepare for trial and try the case. Futhermore, if retrial were precluded because discounting erroneously admitted evidence results in evidentiary insufficiency, there would be no opportunity to correct an error. . .*Id.* at 16-17, 393 A.2d 1369

We decline to examine the sufficiency of the evidence in the case at bar. The appellant will not be subjected to double jeopardy by a retrial, since we reversed and remanded for a new trial on issues outside the sufficiency question. His rights to due process have not been infringed either. This Court has afforded him all that the Constitutions of the United States and the State of Arkansas require, and, we note, relief which he sought: a fair trial, free from prejudicial error.

Petition denied.

MAYFIELD, C.J., dissents.

MELVIN MAYFIELD, Chief Judge, dissenting. The appellants in this case argued five points in their brief on appeal. Their first point was that the trial court erred in overruling their motion for directed verdict. A division of this court reversed and remanded for new trial on one of the other

four points urged and said it did not address the first point which "challenged" the sufficiency of the evidence "inasmuch as we reverse and remand for procedural errors committed by the trial court."

In their petition for rehearing, the appellants contend they are "entitled" to a ruling on their motion for directed verdict for the reason that the granting of that motion would result in dismissal rather than new trial. They cite *Burks* v. *United States*, 437 U.S. 1 (1978), and *Greene* v. *Massey*, 437 U.S. 19 (1978), as authority for their contention.

I agree with the supplemental opinion on rehearing that *Burks* and *Greene* do not require that the sufficiency of the evidence be passed upon before the other points urged for reversal, but where one of those points is that a directed verdict should have been granted, I think we should pass upon it first. I see no reason why we should first review the *trial court's action* in ruling upon the sufficiency of evidence where that action is urged on appeal as a reason for reversal. As I see it, all that is necessary in that situation is to pass upon the sufficiency of the evidence as it stood at the time the trial court ruled — not after we have reviewed motions and objections to evidence and have eliminated any improper evidence from the record.

Therefore, I would grant the petition for rehearing in this case for the purpose of passing upon the appellants' point that the trial court should have granted directed verdicts in their favor.